IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MARIA DALBOTTEN,<br><br>Plaintiff,<br><br>v.<br><br>C. R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC.,<br><br>Defendants. | Case No. 1:20-cv-00034-SPW<br><br>**ORDER ON DEFENDANTS' MOTION TO EXCLUDE OR LIMIT OPINIONS AND TESTIMONY OF DEREK MUEHRCKE, M.D.** |

Before the Court is Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc.'s Motion to Exclude or Limit Opinions and Testimony of Derek Muehrcke, M.D. (Doc. 104). Defendants seek to exclude. Dr. Muehrcke from testifying in several areas. (Doc. 110 at 9-10).[1] A large portion of the motion is identical to issues previously addressed by the MDL Court. (*See* Doc. 110-2). The Court adopts those holdings from the MDL Court and grants in part and denies in part the Defendants' motion for the following reasons.

I.    **Background**

Dr. Muehrcke is a cardiothoracic surgeon who received his specialty training at Harvard Medical School and Massachusetts General Hospital. (Doc. 97-9 at 3).

---

[1] For consistency, the Court will cite to the page numbers generated by CM/ECF rather than those provided by the parties themselves.

1

As stated in his report, Dr. Muehrcke practices as part of a private medical group that performs heart surgeries at several hospitals and also serves as the Chief of Cardiothoracic Surgery at Flager Hospital in Saint Augustine, Florida. He states that he has more than 20 years of experience treating patients with IVC heart filters. He has implanted and removed every iteration of Bard's filters over that period. He has implanted hundreds of filters and has removed entire filters and fragments from the heart.

Defendants seek to exclude 15 areas of inquiry.[2] Six of these areas were addressed by the MDL court. The 15 areas are:

1. Whether the G2 filter is unreasonably dangerous or defective;
2. Whether the dangers of the G2 filter outweighed the potential benefits;
3. The presence of design defects and alternate filter designs;
4. Personal opinions or judgments about Bard's internal documents;
5. The standard of care of a reasonable device manufacturer;
6. Characterization and actions of physicians generally;
7. Bard's motive and intentions;
8. Sufficiency of the G2 filter's Instructions for Use ("IFU");
9. Adequacy of the warnings Bard provided regarding the G2 filter;
10. Whether Bard's marketing information was false or misleading;
11. Whether and how Plaintiff's G2 filter failed;
12. Whether the failure of Plaintiff's filter necessitated surgery;
13. Whether Plaintiff suffered pain and anxiety;
14. Future recommendations for Plaintiff;
15. Adoption or reliance on other expert opinions.

(Doc. 110 at 9-10).

---

[2] These 15 specific areas do not correspond precisely with the arguments presented by Defendants in the body of the brief in support of the motion. Some are addressed out of order and others do not appear to be addressed at all beyond the introduction. Nonetheless, the Court has attempted to fully address each specific issue.

## II. Legal Standard

Under Federal Rule of Evidence 702, a properly qualified expert may testify on the basis of scientific, technical, or other specialized knowledge if it will assist the trier of fact to understand the evidence. An expert is properly qualified based on their "knowledge, skill, experience, training, or education." Fed. R. Evid. 702(a)-(d). The testimony must rest on sufficient facts and data, be based on reliable principles and methods, and the expert must reliably apply the principles and methods to the facts of the case. *Id.*; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). However, cross-examination, rather than exclusion, is the traditional and appropriate method for addressing shaky but admissible evidence. *Daubert*, 509 U.S. at 596.

## III. Analysis

*A. Whether the G2 Filter is "defective" or "unreasonably dangerous"*

Defendants move to preclude Dr. Muehrcke from testifying that the G2 Filter was unreasonably dangerous or defective, on the grounds that such testimony constitutes a legal opinion. (Doc. 110 at 24). However, testimony is not objectionable merely because it embraces an ultimate issue. Fed. R. Evid. 704. Dr. Muehrcke's proffered opinion is that he believes the risks posed by the G2 Filter outweighed its benefits and that the filter suffered from several defects.

3

Whether a product is ultimately defective under Montana law is a question solely for the jury, but an expert is permitted to testify that the filter suffered from several flaws and that, in his opinion, the risks outweighed the benefits without that testimony constituting a legal opinion. The motion is denied as to this issue.

### B. Whether the risks of the filter outweigh the benefits

Similarly, Defendants seek to limit Dr. Muehrcke from testifying that the dangers of the filter outweighed the benefits at the time of its implantation. (Doc. 110 at 9). Depending on the foundation laid at trial for this testimony, such an opinion may be permissible. Dr. Muehrcke is an experienced cardiothoracic surgeon and is therefore qualified to offer opinions as to the risks and benefits of certain procedures. If he provides sufficient support for his conclusions and relies upon admissible information, testimony regarding the risks and benefits of the G2 filter may be appropriate. The Court will reserve ruling on this issue until trial.

### C. Design defects, iterations, and design history

Defendants move to limit Muerhcke from testifying or opining on the design of IVC filters and the G2 filter. (Doc. 110 at 22). They argue that he has no expertise to offer such opinions and he is not an expert in filter design. *Id.* The Court agrees that Dr. Muehrcke may not testify as an engineer or design expert as to structural design weaknesses of the G2 filter. However, as a cardiothoracic surgeon who has implanted and removed hundreds of IVC filters in his career, he

4

is clearly qualified to opine on factors potentially causing a filter's failure, such as a lack of migration resistance. Judge Campbell in the MDL came to the same conclusion. Dr. Muehrcke may also be qualified to opine on more specific design problems such as inadequate leg span, lack of strength and stability, or lack of radial force, depending on the foundation laid for that testimony, including his medical training and experience in implanting and removing IVC filters. Accordingly, as to this issue, the Court defers ruling.

### D. Personal opinions that he was "alarmed" or "disturbed" by Bard's conduct and/or internal documents

Plaintiff agrees not to elicit this testimony. (Doc. 142 at 16). Accordingly, the motion is granted as to this issue.

### E. Standard of care of a reasonable device manufacturer

Defendants do not elaborate on their assertion that Dr. Muehrcke be barred from testifying as to the standard of care of a reasonable device manufacturer, beyond listing it as a specific opinion to be excluded. Dr. Muehrcke is not an expert in device manufacture and therefore, absent foundation to the contrary, the Court grants the motion as to this issue.

### F. Characterization and actions of physicians generally

Defendants seek to limit Dr. Muehrcke from characterization of actions of physicians and specifically limit his use of the phrase, "physicians such as myself."

(Doc. 110 at 9). The basis for this argument is totally unexplained. Dr. Muehrcke is a cardiothoracic surgeon and is certainly qualified to explain what he or other physicians might expect. The motion is denied on this issue.

### G. Bard's state of mind, motive, or intent

Defendants argue that Dr. Muehrcke should be barred from testifying about Bard's state of mind, etc. because he lacks any qualifications to do so. (Doc. 110 at 16). In harmony with the MDL order, the Court agrees. Dr. Muehrcke may be able to opine that Bard should have provided warnings to physicians if it knew of excess risks, but he cannot testify that Bard had that knowledge. That must be proven by other evidence. The motion is granted as to this issue.

### H. Testimony regarding the G2 IFU

Defendants assert that Dr. Muehrcke is unqualified to opine regarding the sufficiency of the G2 filter IFU. (Doc. 110 at 18). Dr. Muehrcke is not an expert in IFUs; he has never drafted one nor been consulted on their adequacy. Accordingly, he may not testify as to whether the G2 IFU was sufficient under the FDA processes or the legal adequacy of the IFU. However, as a physician who relies on IFUs, it may be appropriate for him to testify as to what a physician might reasonably expect from an IFU or what information in an IFU would assist implanting physicians. Therefore, because the expert is qualified in the area and

the testimony may aid the factfinder, the motion is granted in part and denied in part on this issue.

### I. Whether Bard adequately warned physicians of important safety risks

Defendants argue that Dr. Muehrcke is unqualified to opine on the adequacy of the warnings for the same reasons as their argument regarding the IFUs. (Doc. 110 at 10). Dr. Muehrcke cannot testify as to the legal adequacy of the warnings, but, as a cardiothoracic surgeon, it is appropriate for him to testify as to whether, as a physician who relies on such warnings, he believes the warnings adequately informed implanting doctors of the safety risks.

### J. Whether Bard's marketing information was false and misleading

Defendants seek to bar Dr. Muehrcke from testifying that Bard's marketing information was false and misleading about the G2 filter's risks or defects. (Doc. 110 at 10). Dr. Muehrcke possesses no specific expertise enabling him to opine on a corporate entity's internal operation, chain of information, or corporate ethics. His basis for this area of testimony is merely a restatement of documents that he has seen and therefore inappropriate. The motion is granted as to this issue.

### K. Case-specific causation opinions

Defendants challenge the next batch of Dr. Muehrcke's case-specific opinions as unsupported and unreliable. (Doc. 110 at 25). Defendants assert that Dr. Muehrcke's conclusions are unsupported by the medical records and are

7

contrary to the opinions of Plaintiff's treating physicians. (Doc. 110 at 28). Specifically, Defendants assert that Dr. Muehrcke should be precluded from testifying to the causes of the filter failure, whether the filter necessitated surgery, the causes of Dalbotten's pain and anxiety, and his future treatment recommendations for Dalbotten. Generally, such argument is better suited toward cross-examination. *See Daubert*, 509 U.S. at 596.

Defendants' position is that Dr. Muehrcke's conclusions are insufficiently factually supported by Dalbotten's medical records. (Doc. 110 at 27). The relevant question is whether Dr. Muehrcke has utilized a recognized and reliable methodology in developing his opinion based on specialized knowledge that will assist the factfinder to understand the evidence. Fed. R. Evid. 702. In his expert report, Dr. Muehrcke stated that he relied on the same methodology in forming his causation opinions as he would when treating a patient. (Doc. 97-8 at 21). The recognized standard of care in treating and diagnosing a patient is clearly a recognized methodology that he is qualified to employ as a cardiothoracic surgeon. In reaching his conclusions, he relied upon the medical records before him and evaluated them based on his training and experience. This qualifies him to opine on the subject. Whether those opinions are adequately supported or accurate is fodder for cross-examination and is up to the factfinder to determine. The Court finds that, under Rule 702 and *Daubert*, Dr. Muehrcke's opinions regarding

8

causation are allowable. Additionally, the Court has already ruled that Dr. Muehrcke may rely on those records to form an opinion regarding causation and that the matter is inappropriate for summary judgment. (Doc. 276 at 5-6). The motion is denied as to this issue.

### L. *Adoption of or reliance on other expert opinions*

Defendants argue that, consistent with the MDL order, Dr. Muehrcke should not be permitted to restate opinions by other experts. (Doc. 110 at 13). Defendants overstate the MDL ruling, however. Obviously, no expert will be permitted to simply parrot the opinions of other experts, however it is permissible under Federal Rule of Evidence 703 for an expert to rely upon opinions stated by other experts. (*See* Doc. 110-2 at 5). If the other experts' opinions are the kind of information that an expert in the area would reasonably rely on in forming an opinion on the subject, then Dr. Muehrcke may base his opinions on those other experts' conclusions. Fed. R. Evid. 703. Whether that reliance or the conclusions drawn are reasonable goes to weight rather than admissibility. The motion is granted in part and denied in part as to this issue.

## IV. Conclusion

Defendant's Motion to Exclude or Limit Opinions and Testimony of Derek Muehrcke, M.D. (Doc. 104) is GRANTED IN PART and DENIED IN PART in accordance with this Order.

9

DATED this 27th day of January, 2023.

                                         SUSAN P. WATTERS  
                                         United States District Judge