IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MARIA DALBOTTEN,<br><br>               Plaintiff,<br><br>v.<br><br>C. R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC.,<br><br>               Defendants. | Case No. 1:20-cv-00034-SPW<br><br>**ORDER ON DEFENDANTS' MOTION TO EXCLUDE OR LIMIT OPINIONS OF ROBERT DANIEL SUH, M.D.** |

Before the Court is Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc.'s Motion to Exclude or Limit Opinions and Testimony of Robert Suh, M.D. (Doc. 111). Defendants seek to limit Dr. Suh's testimony in several areas, claiming they are outside the scope of his treatment and that he is not qualified as an expert to testify in those areas. (Doc. 112 at 8). For the following reasons, the motion is granted in part and denied in part.

I. **Background**

Dr. Suh is an interventional and diagnostic radiologist who performed an ultrasound thoracentesis procedure on Plaintiff Maria Dalbotten at UCLA Medical Center to remove fluid from her chest on January 1, 2009, in connection with her pleural effusion. (Doc. 111-1 at 9). During the procedure, Dr. Suh ruled out cancer, lupus, and an autoimmune disorder as the cause of the effusion. Further

1

testing found no evidence of a viral cause. CT scans taken for the procedure revealed that the IVC filter in Dalbotten's heart had perforated the surrounding tissue, although the treatment team did not consider that as a cause at the time.

Defendants seek to limit Dr. Suh's testimony in four areas: referring to the filter as tilted; stating that filters are supposed to remain centered in the lumen; agreeing that the filter was not where it should have been; and stating that a fragment from the filter perforating the right ventricle ("RV") could explain the pericardial effusion. (Doc. 112 at 9). Defendants assert that these areas of testimony are outside the scope of Dr. Suh's treatment and that he is unqualified as an expert in these areas. Defendants also assert that, even if Dr. Suh was qualified as an expert, he was not properly noticed and that the probative value of his testimony is substantially outweighed by its unfair prejudice. (Doc. 112 at 9-10).

## II. Legal Standards

A witness can testify on matters of which they have personal knowledge. Fed. R. Evid. 602. A lay witness may only testify in the form of an opinion if it is rationally based on the witness's perception, helpful in understanding testimony or determining a fact at issue, and not based on specialized knowledge. Fed. R. Evid. 701. A witness can testify as an expert and offer opinions on matters where they posses specialized knowledge, skill, experience, training, or education. Fed. R. Evid. 702.

The Ninth Circuit has held that a treating physician is exempt from the expert witness disclosure rules to the extent that their opinion was formed during the course of treatment, rather than formed to provide expert testimony. *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 819 (9th Cir. 2011). "A treating physician's opinion on matters such as causation, future treatment, extent of disability and the like are part of the ordinary care of a patient." *St. Vincent v. Werner Enters., Inc.*, 267 F.R.D. 344, 345 (D. Mont. 2010). A treating physician may give an opinion as to the cause of injury or degree of injury in the future, "if properly based on personal knowledge, history, treatment of the patient, and facts of his or her examination and diagnosis." *Id.*

To exclude evidence under Federal Rule of Evidence 403, the evidence's probative value must be substantially outweighed by a danger of unfair prejudice, confusion, undue delay, or wasting time. Unfair prejudice in the context of the rule means an undue tendency to suggest decision on an improper basis. Fed. R. Evid. 403 advisory committee's notes.

**III. Analysis**

*A. Referring to the filter as tilted*

Defendants argue that Dr. Suh cannot discuss whether the CT scans of Dalbotten's chest show that her filter was eccentrically tilted within the lumen because he is a thoracic interventional radiologist and last implanted an IVC filter

3

in the 1990s. (Doc. 112 at 13). The Court simply does not see how this testimony could be considered outside the scope of Dr. Suh's treatment of Dalbotten. The CT scans were taken at the time he saw the patient. They are contained within the contemporaneous medical records. Dr. Suh testified "with a high degree of certainty" that he reviewed the scans. (Doc. 112-2 at 88:7-10). Especially on a matter as simple as whether the filter was tilted, Dr. Suh is certainly qualified to offer his medical opinion. The motion is denied as to this issue.

### B. *Whether the filter is supposed to remain centered in the lumen*

Plaintiff agrees that she will not elicit Dr. Suh's testimony on this matter. (Doc. 137 at 6). Therefore, the motion is granted as to this issue.

### C. *Whether the filter should have been puncturing or perforating through the vena cava*

Defendants argue that Dr. Suh cannot properly testify as to whether the filter was properly deployed or should have been perforating through the vena cava because that is outside the scope of his treatment. (Doc. 112 at 9). Once again, this statement is fairly innocuous. Since Dr. Suh is a physician who dealt with Dalbotten's various heart issues, it is certainly within the scope of his treatment opinions to state that an IVC filter should not be puncturing or perforating through the heart tissue. The motion is denied as to this issue.

4

*D. Cause of Dalbotten's pericardial effusion*

Defendants assert that Dr. Suh's statement that a metal fragment perforating the RV and pericardium could explain the effusion is outside the scope of his treatment of the patient. (Doc. 112 at 17). Defendant's argument overcomplicates the issue and mischaracterizes Dr. Suh's deposition testimony. One of the purposes for Dr. Suh performing the ultrasound thoracentesis procedure was to determine the cause of the effusion; he was unable to determine the cause but did not consider the placement of the IVC filter. (Doc. 112-2 at 96:18-25 to 97:1-10). His opinion now that the fragment could have been the cause is squarely within the "cause of injury or degree of injury in the future, if properly based on personal knowledge, history, treatment of the patient, and facts of his or her examination and diagnosis," and therefore proper. *St. Vincent*, 267 F.R.D. at 345. Accordingly, the motion is denied as to this issue.

*E. Rule 403*

Defendants assert that Dr. Suh's testimony on these issues should likewise be barred because its probative value is substantially outweighed by its risk of unfair prejudice. (Doc. 112 at 21). They state that "admission of Dr. Suh's opinions would cause unfair prejudice to Bard, as they might influence the jury to reach a finding based on unsupported and speculative opinions." (Doc. 112 at 22). This is not unfair prejudice—this goes to the weight and reliability of the

testimony. As such, it is a matter for cross-examination and argument, not exclusion. Admission of this evidence would not tempt the jury to find against Bard for emotional reasons. It is not unduly confusing or dilatory. It is only prejudicial to the extent that it harms Defendants' case. The motion is denied as to this issue.

## IV.  Conclusion

For the reasons stated herein, Defendants' Motion to Exclude or Limit Opinions and Testimony of Robert Daniel Suh, M.D. (Doc. 111) is GRANTED IN PART and DENIED IN PART. Because the Court has determined that this testimony is based on Dr. Suh's treatment, it does not reach the issues raised by Defendants regarding expert testimony and disclosure.

DATED this 1st day of February, 2023.

                                                                               _____
                                                                               SUSAN P. WATTERS
                                                                               United States District Judge