Tom L. Lewis
2715 Park Garden Lane
Great Falls, MT 59404
406-899-2968
marias.ridge.ranch@gmail.com

Nicholas P. Scarpelli, Jr. (*Pro Hac Vice*)
Carney Badley Spellman P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104
206-607-4124
scarpelli@carneylaw.com

Ramon Rossi Lopez (*Pro Hac Vice*)
Lopez McHugh LLP
120 Vantis Dr., Suite 430
Aliso Viejo, CA 92656
949-737-1501
rlopez@lopezmchugh.com

*Attorneys for Plaintiffs Maria Dalbotten*

Ian McIntosh
Kelsey E. Bunkers
CROWLEY FLECK, PLLP
1915 South 19th Avenue
P.O. Box 10969
Bozeman, MT 59719-0969
406-556-1430
imcintosh@crowleyfleck.com
kbunkers@crowleyfleck.com

Richard B. North, Jr. (*Pro Hac Vice*)
Matthew B. Lerner (*Pro Hac Vice*)
Sanjay Ghosh (*Pro Hac Vice*)
Brandee J. Kowalzyk (*Pro Hac Vice*)
NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street NW, Suite 1700
Atlanta, GA 30363
404-322-6000
richard.north@nelsonmullins.com
matthew.lerner@nelsonmullins.com
sanjay.gosh@nelsonmullins.com
brandee.kowalzyk@nelsonmullins.com

*Attorneys for Defendants C. R. Bard, Inc., and Bard Peripheral Vascular, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| MARIA DALBOTTEN,<br><br>Plaintiff,<br><br>v.<br><br>C. R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC.,<br><br>Defendants. | 1:20-cv-00034-SPW<br><br><br>**FINAL PRETRIAL ORDER** |

Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard") and Plaintiff Maria Dalbotten, in accordance with Fed. R. Civ. P. 16 and L.R. 16.4 and the Third Amended Scheduling Order (Doc. 273), submit this Final Pretrial Order to govern the trial of this matter

1.   **NATURE OF ACTION**

This is a product liability action brought by Plaintiff relating to injuries and damages she claims she suffered after being implanted with the Bard G2® Inferior Vena Cava (IVC)_Filter ("G2® Filter"). The G2® Filter was designed, marketed, and sold by Defendant BPV and manufactured in a facility owned by Defendant C. R. Bard. The G2® Filter was placed in Plaintiff on August 23, 2006 to reduce the risk of pulmonary embolism after Plaintiff was involved in a serious automobile accident.  Plaintiff claims that the G2® Filter was defectively designed and manufactured and that the warnings Bard provided were inadequate and seeks compensatory and punitive damages.  Plaintiff is also making a claim for fraudulent concealment and constructive fraud.  Based on the Amended Complaint [Doc. 45], and the Court's Order on Defendants' Motion for Summary Judgment [Doc. 276], the Plaintiff's remaining legal claims are as follows:

Count 1-Strict Product Liability Manufacturing Defect

Count 2- Strict Product Liability Design Defect

Count 3- Strict Product Liability Failure to Warn

Count 7-Fraudulent Concealment

Count 8-Constructive Fraud

Bard denies each of Plaintiff's claims and contends that the G2® Filter was safe and effective, was not defective in its manufacture, design or in its instructions/warnings, and denies there is any basis for fraudulent concealment or constructive fraud. Bard further denies that it is responsible for the injury and damages alleged by Plaintiff, that Plaintiff's alleged damages are not to the extent that Plaintiff claims, and that Plaintiff is entitled to punitive damages.

## 2.   <u>JURISDICTION AND VENUE</u>

This Court has jurisdiction pursuant to 28 U.S.C. § 1332 governing diversity of citizenship. Jurisdiction is not disputed. Plaintiff Maria Dalbotten is a citizen and resident of the State of Washington. Defendant C. R. Bard, Inc. is a corporate citizen of the State of New Jersey with its headquarters in the State of New Jersey. Defendant Bard Peripheral Vascular, Inc. is a corporate citizen of the State of Arizona. The amount in controversy exceeds $75,000. Venue is proper under 28 U.S.C. § 1391(b)(2) because the United States District Court of Montana is the judicial district in which a substantial part of the events giving rise to the claim occurred.

## 3.   <u>JURY</u>

The case is set for trial and neither party contests trial of any issue before the jury. The Court's Order has set this for a jury of 7 persons. Given the anticipated

length of trial, Bard requests a jury of 8 persons to ensure that there are sufficient jurors at the conclusion of evidence to render a verdict.

Plaintiff objects to a seven person jury and suggests that better course would be a six person jury with two or three alternates. Plaintiff suggests that only six persons may vote from the final jury after alternates are either substituted or dismissed.

4.    **AGREED FACTS**

The following facts are agreed upon and require no proof:

(a)    The Defendants in this case are C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. ("BPV").

(b)    BPV is the wholly owned subsidiary of C. R. Bard, Inc., the parent company. Throughout this case the Defendants will be referred to collectively as "Bard" or "Defendants."

(c)    The product that is the subject of this lawsuit is a Bard G2® Filter designed, manufactured, marketed, and sold by Bard.

(d)    The G2® Filter is a prescription medical device.

(e)    The G2® Filter is intended to trap blood clots arising from the venous system in the pelvis and legs to aid in protecting against blood clots flowing into the lungs or heart.

(f)    The G2® Filter is conical in shape and consists of a main shaft to which twelve struts (six "arms" and six "legs") are attached.

(g)   On August 22, 2006, Plaintiff Maria Dalbotten, at age 22, was injured in a highway motor vehicle accident near Glendive, Montana. After the accident Plaintiff was taken to Glendive Hospital, and then transferred via Air Flight to Billings Clinic Hospital in Billings, Montana.

(h)   On August 23, 2006,  Dr. John Craig, M.D., a general and vascular surgeon, implanted a Bard G2® Filter in Ms. Dalbotten's IVC.

(i)   There were no complications with the Filter during the placement procedure.

(j)   Ms. Dalbotten remained hospitalized at Billings Clinic Hospital until September 6, 2006, at which point she was discharged and transferred to the University of Washington Medical Center for inpatient rehabilitation.

(k)   Ms. Dalbotten then remained in inpatient rehabilitation at the University of Washington Medical Center until discharge on September 19, 2006.

(l)   On December 25, 2008, Ms. Dalbotten presented to the Emergency Room at Southwest Washington Medical Center in Vancouver, Washington complaining of pain under her left rib area.

(m)   On December 30, 2008, Ms. Dalbotten presented to the emergency room at the University of California Los Angeles Medical Center complaining of syncope and shortness of breath. Ms. Dalbotten was

admitted to the hospital where she was diagnosed with pericardial effusion (fluid around heart) and a pleural effusion (fluid around lungs). Ms. Dalbotten remained in the hospital until her discharge on January 5, 2009.

(n)    On December 4, 2015, Ms. Dalbotten consulted Dr. Christopher Ingraham, M.D, at the University of Washington in Harborview to have her Filter evaluated.

(o)    On December 17, 2015, Dr. Ingraham referred Ms. Dalbotten to Dr. William Kuo, M.D., an interventional radiologist at Stanford Health Care, for further consultation regarding removal of the Filter.

(p)    On March 4, 2016, Dr. Kuo removed Ms. Dalbotten's Filter and two retained struts through a percutaneous (non-open) procedure but did not remove the fractured fragment in Ms. Dalbotten's right ventricle.

(q)    On May 20, 2016, Dr. Nahush Mokadam removed the G2 filter fragment from Ms. Dalbotten's heart using an incision through the anterior chest wall.

(r)    The parties stipulate that Ms. Dalbotten's medical records and bills are authentic and satisfy the business records exception but reserve all other available objections.

The following material facts, although not admitted, will not be contested at trial by evidence to the contrary:

(a) Ms. Dalbotten is not seeking to recover past or future lost wages or loss of earning capacity as part of her damages;

## 5.   **ELEMENTS OF LIABILITY**

**Plaintiff's Contentions**

(a)   The Bard G2 IVC filter implanted into Plaintiff's IVC was defectively designed.  Plaintiff will prove that at the time the Bard G2 IVC filter was implanted in Maria Dalbotten, it was in a defective condition beyond the anticipation of Plaintiff and caused her severe injury. Bard is therefore strictly liable for physical harm to Plaintiff caused by the defective IVC filter A product is in a defective condition to a user if it is dangerous to an extent beyond that anticipated by the ordinary user. *McAlpine v. Rhone-Poulenc AG Co.*,  304 Mont. 31, 16 P.3d 1054 (2000); *Wise v. Ford Motor Co.*,,, 284 Mont. 336,340, 943 P.2d 1310, 1312 (1997); MCA 27-1-719; *McJunkin v. Kaufman and Broad Home Systems, Inc.,* 229 Mont. 432, 748 P.2d 910 (1987); *Stenberg v. Beatrice Foods,* 176 Mont. 123, 576 P.2d 725 (1978).

(b)   The Bard G2 IVC filter implanted into Plaintiff's IVC was defectively manufactured.  manufacturing:  Plaintiff will prove that at the time the Bard G2 IVC filter was sold by Defendants and implanted in Maria Dalbotten, the G2 filter was in a defective condition because of a manufacturing defect, and that the manufacturing defect caused injury

to Ms. Dalbotten. A manufacturing defect exists when a product fails to conform to its design. *McAlpine*; *Kuiper v. Goodyear Tire & Rubber*, 207 Mont. 37, 60, 673 P.2d 1208, 1220-21 (1986).

(c) Bard gave inadequate warning of dangers inherent in its G2 IVC filter: Plaintiff will prove first, that Defendants sold the G2 filter in a defective condition because of a failure to adequately warn of those dangers which would not be readily recognized by the ordinary user of the product. Second, that the failure to provide adequate warning caused injury to Ms. Dalbotten. *McAlpine*; MCA 27-1-719. See *Streich v. Hilton-Davis, a Div. of Sterling Drug, Inc.*, 214 Mont. 44, 56, 692 P.2d 440, 444 (1984), and *Tacke v. Vermeer Mfg. Co.*, 220 Mont. 1, 713 P.2d 527(1986).

(d) Bard is guilty of constructive fraud: Plaintiff will prove, (1) Defendants breached a duty to speak the truth concerning the nature, capabilities, risks, and dangers associated with the G2 filter, (2) such breach misled the Ms. Dalbotten to her detriment, injuries and damages, and (3) this resulted in an advantage to Defendants.

(e) Bard fraudulently concealed from users and consumers, including Maria Dalbotten, the dangers inherent in its G2 IVC filter thereby causing injuries and damages to Ms. Dalbotten.

(f)     Plaintiff will prove that radiological studies taken during her treatment at UCLA showed a tilted and fractured G2 IVC filter with a filter strut migrated to right ventricle of her heart.

(g)     A December 30, 2008 UCLA chest x-ray of Ms. Dalbotten later revealed the filter tilted to the right and a possible filter strut is seen projecting over the heart.

(h)     A December 30, 2008 CT of Dalbotten's abdomen with contrast revealed the filter tilted to the right, two of the filter legs end outside the IVC, and filter strut in the right ventricle, and pericardial effusion.

(i)     A December 31, 2008 CT of Ms. Dalbotten's chest revealed da filter arm penetrating the right ventricle into the pericardial fat.

(j)     On December 4, 2015, when Dr. Ingraham of the University of Washington in Harborview evaluated a CT scan to evaluated her filter, Plaintiff's heart the G2 filter, the scan indicated the G2 filter had significant rightwards tilt, with one strut in the right ventricle, mostly in the cavity, but entering the free wall of the heart. This was the first notice to Ms. Dalbotten that her filter had tilted, fractured and a filter strut migrated to her heart.

(k)     Plaintiff will prove that Dr. Kuo obtained an additional CT scan on March 3, which revealed a fractured strut of the G2 filter perforating

through the right ventricular wall into the pericardial fat, and severe multifocal penetration.

(l)    Dr. Kuo also reviewed radiological studies from the Plaintiff's UCLA hospitalization and determined that the fractured filter strut was present in Plaintiff's heart in 2008.

(m)    On March 4, 2016, Dr. Kuo removed the tilted and fractured Bard G2 IVC filter and two retained struts through a percutaneous procedure, but did not remove the fractured fragment of Ms. Dalbotten's right ventricle.   He used balloon venoplasty to treat narrowing of Ms. Dalbotten's IVC where the filter had been implanted and failed.

(n)    The Court granted summary judgment in favor of Ms. Dalbotten and against the Defendants concerning its statute of limitations defense. There is no statute of limitations defense available to Bard in this case.

(o)    The Court granted summary judgment to Maria Dalbotten deciding that there is no evidence that she was at fault in causing her own injuries and damages related to the failure, tilting, fracture and migration of the filter strut to her heart.

(p)    The Court granted summary judgment to Maria Dalbotten is not guilty of negligence relating to injuries or damages caused by the defective G2 IVC filter implanted into her inferior vena cava.

(q)     The Court has ruled by summary judgment that Dalbotten did not assume the risk of injury and damages and did not voluntarily expose herself to injury and damages from the failure of the G2 filter.

(r)     The Court has ruled by summary judgment that Ms. Dalbotten did not misuse the filter.

(s)     The Court has ruled by summary judgment that conduct or negligence of any other person or entity is not a defense available to Bard in this action.

(t)     The Court has ruled by summary judgment that there are no intervening or superseding events or conduct that caused Ms. Dalbotten's injuries and damages resulting from the failure of the Bard G2 filter implanted in her body.

(u)     Compensatory damages caused by the defective Bard G2 IVC filter that tilted, fractured and migrated with a leg of the filter found in the right ventricle of Ms. Dalbotten's heart, including pain and suffering and medical expenses related to her hospitalization and treatment in 2008 at UCLA and her treatment and care provided by Dr. Christopher Ingraham, Dr. William Kuo and Dr. Mokadam and others who treated her for the defective Bard G2 IVC filter.

(v)     Punitive damages: Plaintiff must prove by clear and convincing evidence that Defendants have engaged in fraud or malice. Fraud is

either a representation by Defendants with knowledge of its falsity or concealing a material fact with the purpose of depriving Ms. Dalbotten of her legal rights or otherwise causing her injury. Malice exists if Defendants have knowledge of facts or intentionally disregard facts that create a high probability of injury to the Ms. Dalbotten and Defendants act in conscious or intentional disregard of or indifference to a high probability of injury.

## 6. <u>DEFENSE ELEMENTS</u>

Many of the elements of defenses and legal issues are set forth in Bard's two summary judgment motions and related motions *in limine* as well as in proposed jury instructions and any trial briefs it will file. They include the following defenses:

(a) Plaintiff cannot meet her burden of proving each element of each of her claims by a preponderance of the evidence.

(b) Plaintiff does not have reliable case-specific expert testimony to support her claims, with the result that she is unable to prove her product liability claims in this action.

(c) The Plaintiff is not able to meet her burden of proof that the G2® Filter is capable of causing injury beyond that which would be expected by the ordinary user, which in a prescription medical device case like this one, is the ordinary implanting physician.

(d)   Defendants did not fail to warn of any dangers associated with the use of the G2® Filter, and Plaintiff has not shown that an alleged failure to warn was the cause of her injuries. Bard's warnings in the G2® Filter IFU were adequate as a matter of law where they expressly warned of each of the alleged injury-causing risks associated with the Filter— perforation, migration, fracture, and embolization of fractured fragments. The complications with the Filter were also well known within the legal community, including by Dr. Craig, the implanting physician, who placed the filter in this case. Under Montana law (like most jurisdictions), when the product at issue is available only through a prescription from a licensed healthcare provider (here, Dr. Craig), the learned intermediary doctrine operates as an exception to a manufacturer's duty to warn the ultimate consumer of a potential danger, and instead a manufacturer's duty is to adequately warn the prescribing physician. Bard's duty to warn ran to Dr. Craig, and not to Plaintiff, under the learned intermediary doctrine.   Dr. Craig testified that he knew and understood the risk of injury from Plaintiff's alleged G2® Filter complications before implanting the G2® Filter.  Given the foregoing, Plaintiff cannot meet her burden of proving that the warnings Bard provided with the G2® Filter at the time it left Bard's control made it defective or unreasonably dangerous, that the warnings Bard

provided regarding the G2® Filter were inadequate, or that any alleged inadequacy with the warnings proximately caused her alleged injuries.

(e)   Plaintiff's strict liability design defect claim fails as a matter of law because Plaintiff has failed to provide evidence that the G2® Filter was defective or unreasonably dangerous at the time it left Bard's control, that there was an alternative design that should have been used, or that any alleged defect was the proximate cause of her injuries.  As with all implantable medical devices, all IVC filters carry certain risks.  The alleged injury-causing risks associated with the G2® Filter—perforation, migration, fracture, and embolization of fractured fragments—are well known in the medical community to occur in all types of IVC filters.  For example, the Society of Interventional Radiology ("SIR"), which is the international organization for interventional radiologists (the principal medical specialty that places and retrieves IVC filters), publishes the Journal of Vascular and Interventional Radiology, which over the years has published hundreds of articles about IVC filters and their complications.  In 2001 and again in 2003, the SIR published in the Journal of Vascular and Interventional Radiology guidelines that discuss complications associated with all IVC filters and reported that IVC filters as a class of product have been reported to penetrate up to 41% of the time, migrate up to 18%, fracture

*Final Pretrial Order – 14*

up to 10%, and tilt and other insertion problems can occur up to 50% of the time. Similarly, since the mid-1990s, the FDA has recognized that these complications are associated with all brands of IVC filters, noting that these risks are "well known to the users" (i.e., doctors who implant IVC filters) and are "well characterized in the medical literature." Thus, the mere fact that Plaintiff experienced complication with her G2® Filter does not indicate that the complications were caused by a defect with the filter, rather than a known and accepted risk and complication of all IVC filters given their life-saving nature.

(f)     Plaintiff has not offered any evidence that her G2® Filter did not conform in some aspect to the intended design. Plaintiff also has not offered any evidence that any alleged manufacturing defect made her G2® filter unreasonably dangerous. Plaintiff has not presented any evidence, expert or otherwise, from which it can be inferred that the G2® Filter implanted in Plaintiff deviated in some material way from Bard's design or manufacturing specifications for the G2® filter, or that such defect caused Plaintiff's alleged Filter failure.

(g)     Plaintiff has not proffered any evidence, whatsoever, to meet her burden of proof on her fraudulent concealment and constructive fraud claims. As a threshold matter, the learned intermediary doctrine applies to the Plaintiff's fraud-based claims, such that Plaintiff must establish

*Final Pretrial Order – 15*

any fraudulent representations about the G2 were directed to Dr. Craig, the Plaintiff's prescribing physician, not Plaintiff.  Plaintiff has no evidence that Bard engaged in any conduct that could be considered fraudulent—either with or without an intent to deceive. Moreover, there is no evidence that Dr. Craig even relied on any representations from Bard or that Bard intended to deceive Dr. Craig, as is required to prove fraudulent concealment.

(h)  The damages allegedly suffered by Plaintiff were not proximately caused by any defect with the Filter or any act or omission of the Defendants.

(i)  Plaintiff has significantly overstated her damages.  Plaintiff is only entitled to medical bills actually paid and that are directly related to the complications she experienced with the Filter. *See Gibson v. United States*, 2021 MT 309, 406 Mont. 450, 499 P.3d 1165.

(j)  Bard is entitled to a set off or reduction in damages as a result of the collateral source rule.  If there is a verdict in Plaintiff's favor, the Court must hold a post-trial hearing to reduce the amount of damages due to collateral sources.  If there is a judgment for Plaintiff, Bard is entitled to an offset for all amounts paid to Plaintiff from any party that does not have a subrogation right.

(k)     Plaintiffs are not entitled to punitive damages and this issue should not be presented to the jury.  Plaintiff cannot show any evidence, much less the required "clear and convincing evidence" that Bard acted with malice or acted with conscious or intentional disregard or indifference to the high probability of injury to Plaintiff.

## 7.     **RELIEF SOUGHT**

### A.     **Plaintiffs**

(a)     Compensatory damages for: pain and suffering, fear, anxiety, mental anguish, emotional distress, disfigurement, embarrassment, loss of enjoyment of life, and medical expenses.

(b)     Punitive damages.

Costs that are just and reasonable.

### B.     **Defendants**

No counterclaims or demands have been made by Defendants, but Defendants request their costs and such other and further relief as the Court deems just and proper should Defendants prevail in this action.

## 8.   **LEGAL ISSUES**

The Court has made numerous pretrial rulings concerning pretrial motions filed by the parties in this case.

(a)   The remaining legal issues relate primarily to the parties' proposed jury instructions submitted with this pretrial order and any supplemental proposed jury instructions. All legal issues will be disputed at the time of jury instruction.

(b)   The Defendants have several times in this document asserted that the plaintiff must prove that the Bard G2 IVC filter was both defective and unreasonable dangerous to recover. That is a misstatement of settled Montana law. *McAlpine v. Rhone-Poulenc AG Co.*, 304 Mont. 31, 16 P.3d 1054 at 1059 (2000), held that it is reversible error to instruct a jury that it must find a product both defective and unreasonably dangerous. *McAlpine* relied on *Wise v. Ford Motor Co.*, 284 Mont. 336, 340, 943 P.2d 1310, 1312 (1997) holding that a plaintiff can establish that a product is defective by proving that it is "capable of causing injury to the user beyond that which would be expected by the ordinary user. (See also Montana strict product liability instructions found at pp. 7.00 -7.07, MPI2d—none of those instructions require a plaintiff to prove a product is "unreasonably dangerous" to prove liability.

(c)   Legal issues may remain to be decided on matters not decided or reserved by the Court concerning the parties' motions *in limine;*

(d)   The issue of the amount of punitive damages to be awarded will be bifurcated.  Montana's statutory punitive damages cap will apply.

**Plaintiffs' position:**

Plaintiff incorporates by reference Paragraph 5 of this Pretrial Order and the arguments presented in Plaintiff's brief relating to yet undecided motions in limine.

(a) Plaintiff will present arguments related to instructions submitted by the parties.  Plaintiff's authorities for proposed instruction are set forth at the bottom of proposed instructions.

(b) Plaintiff will argue that the Montana cap on punitive damages applies to each Defendant separately. M.C.A § 27-1-220.

**Defendants' position:**

Bard incorporates by reference Paragraph 6 of this Pretrial Order and the arguments presented in Bard's brief relating to yet undecided motions in limine.

(a) Whether Plaintiff can meet her burden of proving each element of each of her substantive claims by a preponderance of the evidence.

(b) Whether the Plaintiff can meet her burden of proof for each of her strict liability claims that the G2® Filter was defective (whether in manufacture, design, or warnings).

(c) Whether plaintiff can show that at the time of sale the G2® Filter was in a defective condition because of a manufacturing defect (i.e., that the G2® failed to conform to its intended design).

(d) Whether plaintiff can show that the G2® Filter was in a defective condition, unreasonably dangerous at the time of sale.

(e) Whether Plaintiff can show that at the time of manufacture of G2® there existed an alternative design that should have been used after balancing various factors, including those discussed *Rix v. Gen. Motors Corp.*, 222 Mont. 318, 328, 723 P.2d 195, 201–02 (1986); *Krueger v. Gen. Motors Corp.*, 240 Mont. 266, 274, 783 P.2d 1340, 1345 (1989) (quoting Rix).

(f) Whether plaintiff can show that the warnings Bard provided with the G2® Filter inadequately warned of dangers associated with it and whether those dangers would not be readily recognized by an ordinary user of the device (here, the learned intermediary, Dr. Craig).

(g) Whether the Plaintiff can meet her burden of proof that any alleged defect (whether with the manufacture, design, or warnings) with the G2® filter was the proximate cause of her alleged injuries.

(h) Whether Plaintiff can support her burden of proof on her fraudulent concealment and constructive fraud claims.

(i) Whether Plaintiff has suffered any legally recoverable damages and the extent of those damages.

(j) Whether Plaintiff can meet her burden of proof (clear and convincing evidence) on her punitive damages claim and can show that Bard acted with fraud or actual malice because it had knowledge of facts or intentionally disregarded facts that created a higher probability of injury to the Plaintiff and it deliberately proceeded to act in conscious disregard or with indifference to the high probability of injury to Plaintiff.

(k) Defendants will argue that the Montana cap on punitive damages applies to them collectively, not separately.

(l) The amount of damages, if any, that are recoverable in this action. Bard is entitled to an offset for all amounts paid by collateral sources and all amounts paid to Plaintiff from any party that does not have a subrogation right.

(m) All legal issues raised by contentions, claims, and defenses of the parties.

(n) MDL No. 2641 and Law of the Case: As the Court is aware, Bard's entire line of retrievable IVC filters has been the subject of a multidistrict litigation created before the Honorable David G. Campbell, in the District of Arizona, known as the *In Re: Bard IVC Filters Products Liability Litigation*, MDL 2641. This case was one of several that had partially conducted fact discovery before the MDL was formed in 2015. Additional fact and expert discovery relevant to this case were developed in the MDL.

In the MDL, Bard produced millions of additional pages of documents, the plaintiffs conducted the depositions of dozens of additional corporate witnesses, the parties named and deposed numerous additional expert witnesses, and Judge Campbell ruled on many *Daubert* motions and motions in limine as part of the bellwether trials.

The history of the MDL, extensive discovery, and summaries of Judge Campbell's rulings on generic discovery and evidentiary issues are detailed in an Order and Suggestion of Remand [Dkt. 9-1]. The "Key Legal and Evidentiary Rulings" that Judge Campbell details beginning on page 16 should be the law of the case in this action.[1] Indeed, the parties referenced Judge Campbell's order at length in their Preliminary

---

[1] *See Shute v. Carnival Cruise Lines, Inc.*, 804 F. Supp. 1525, 1527 (S.D. Fla. 1992) ("Traditional principles of law of the case counsel against the transferee court reevaluating the rulings of the transferor court[.]") (internal quotation omitted); *Murray v. Sevier*, 993 F. Supp. 1394, 1400 (M.D. Ala. 1997) ("For this court to reexamine the [transferor] court's prior decisions would likely amount to little more than a second-guessing of the [transferor] court's well-reasoned decisions. This viewpoint is largely adopted by transferee courts which have been faced with similar requests to overturn a transferor court's decision."); *see also In re Welding Fume Prod. Liab. Litig.*, No. 1:03-CV-17000, 2010 WL 7699456, at *2 (N.D. Ohio June 4, 2010) ("[T]he law of the case doctrine, in this context, ensures that the transferor judge is not asked to re-plow ground already prepared by the MDL court for the efficient harvest of a verdict at trial."); *In re Zyprexa Prod. Liab. Litig.*, 467 F. Supp. 2d 256, 273 (E.D.N.Y. 2006) (under the law of the case doctrine, pre-remand orders of the transferee court "remain binding if the case is sent back to the transferor court."); *see also Multi District Litigation Act*, 28 U.S.C. § 1407 (intended to "promote the just and efficient conduct of [] actions" through "coordinated or consolidated pretrial proceedings").

Pretrial Statements [Dkts. 38 & 39]. The rulings by Judge Campbell include the admissibility of FDA Evidence and the 510(k) clearance process; privilege and work-product rulings; *Daubert* rulings concerning many experts that Plaintiff identify on his witness list; motions in limine that bear on generic issues applicable to the remanded cases, including this case; and deposition designations of various Bard corporate and expert witnesses (including one case, Booker, in which the plaintiff contended that she was treated with a G2® filter).[2]

9.  **DISMISSALS**

The parties are not requesting or proposing dismissal of any parties, claims, or defenses.

10.  **USE OF DISCOVERY DOCUMENTS**

A.  **Plaintiff**

    a.  Plaintiff may use responses 10 and 11 to Defendants' supplemental objections and responses to Plaintiff's first interrogatories and requests for production to Defendants.

    b.  Plaintiff may use the following discovery documents:

---

[2] Bard believes that the majority of the deposition designations are generic in nature, and thus subject to Judge Campbell's rulings in the MDL. Because Plaintiff's case involves the G2® Filter, however, Bard reserves the right to request that the Court re-evaluate certain of the deposition designation rulings given this fact.

- C.R Bard's Responses to Plaintiff's First Request for Admissions,
- BPV's Responses to Plaintiff's First Request for Admissions,
- CR Bard's Amended Responses to Plaintiff's First Requests for Admission,
- BPV's Amended Responses to Plaintiff's First Request for Admission,
- CR Bard's Second Amended Responses to Plaintiff's First Request for Admissions,
- BPV's Second Amended Responses to Plaintiff's First Request for Admissions,
- CR Bard's Responses to Plaintiffs Second Request for Admissions, and
- BPV's Responses to Plaintiff's Second Request for Admissions

**B.     <u>Defendants</u>**

1.     Defendants may use the following responses:

- Plaintiff's Answers to Defendant Bard Peripheral Vascular, Inc.'s First Interrogatories.
- Plaintiff's Answers to Defendant Bard Peripheral Vascular, Inc.'s First Requests for Production.

## 11.   **ESTIMATE OF TRIAL TIME**

The parties estimate that it will take no more than 12 court days for the trial of this action.

## 12.   **WITNESSES**

Plaintiff's Will-call witness list attached as **Exhibit A**.

Plaintiff's May-call witness list attached as **Exhibit B**.

Defendants' May-call witness list attached as **Exhibit C**.

Defendants' Will-call witness list attached as **Exhibit D**.

## 13.   **EXHIBITS**

Plaintiff's Exhibit List is attached as **Exhibit E**.

Defendants' Exhibit List is attached as **Exhibit F**.

## 14.   **EXPERT REPORTS**

In accordance with the Court's instructions, the parties will provide expert reports to the Court at the pretrial conference.

## 15.   **VOIR DIRE**

The Court has advised that the parties will conduct voir dire in this case.

## 16.   **JURY INSTRUCTIONS AND VERDICT FORM**

The parties' proposed jury instructions and verdict form are being filed separately contemporaneously with the filing of this proposed Final Pretrial Order.

## 17.   OTHER STIPULATIONS/PROPOSALS FROM OTHER CASE MANAGEMENT ORDERS

(a) <u>Live trial Witnesses</u>: The parties agree and stipulate that trial witnesses who will testify live at trial will be named to the other party 48 hours before the witness is called to testify.

(b) <u>Witnesses Called by Deposition:</u> The parties agree and stipulate that no later than 36 hours before a witness is called (and, if applicable the video to be played), the party calling the witness provides opposing counsel for review and approval (1) the final transcript of the deposition to be played, and (2) the final edited video of the deposition to be played.

(c) <u>PowerPoint presentations for use in opening statement or closing argument</u>:

    (1) The parties will exchange PowerPoint presentations to be used in opening statements by 6:00 p.m. the night before the opening statement is to be given.

    (2) The parties will exchange PowerPoint presentations to be used in closing arguments by midnight the night before it is to be given, with clearly delineated updates allowed 2 hours prior to closing.

    (3) Other Demonstrative exhibits, PowerPoints and exhibits that will be used with the witness on direct examination will be disclosed

to the opposing party by 7:00 p.m. the night before the witness is called to testify.

(4) Additional Exhibits - The parties agree and stipulate that the opposing party will be allowed up to 25 exhibits that have not previously been disclosed in exhibit lists. The additional exhibit will be disclosed to the other party by 7:00 p.m. the night before the exhibit is used.

## 18. SUPERSESSION

This Order supersedes the pleadings in this matter.

DATED this 21st day of February, 2023.

Susan P. Watters

Honorable Susan P. Watters
UNITED STATES DISTRICT JUDGE

(f) Filing. The proposed final pretrial order must be signed by all counsel and self-represented parties, filed in the electronic record, and e-mailed to chambers in compliance with L.R. 7.1(c)(3)(B)-(F).

[*signatures on following page*]

Approved as to form and content:

This 10th day of February, 2023.

*Final Pretrial Order – 27*

TOM L. LEWIS, P.C.

*[s] Tom. L. Lewis*
Tom L. Lewis

CARNEY BADLEY SPELLMAN P.S.

*[s] Nicholas P. Scarpelli, Jr*
Nicholas P. Scarpelli, Jr. (*Pro Hac Vice*)

LOPEZ MCHUGH LLP

*[s] Ramon Rossi Lopez*
Ramon Rossi Lopez (*Pro Hac Vice*)

LOPEZ MCHUGH LLP

*[s] Joshua Mankoff*
Joshua Mankoff (*Pro Hac Vice*)

*Attorneys for Plaintiffs Maria Dalbotten*

CROWLEY FLECK, PLLP

*[s] Ian McIntosh*
Ian McIntosh

CROWLEY FLECK, PLLP

*[s] Kelsey E. Bunkers*
Kelsey E. Bunkers

NELSON MULLINS RILEY & SCARBOROUGH LLP

*[s] Richard B. North, Jr.*
Richard B. North, Jr. (*Pro Hac Vice*)

NELSON MULLINS RILEY & SCARBOROUGH LLP

*[s] Matthew B. Lerner*
Matthew B. Lerner (*Pro Hac Vice*)

NELSON MULLINS RILEY & SCARBOROUGH LLP

*[s] Sanjay Ghosh*
Sanjay Ghosh (*Pro Hac Vice*)

NELSON MULLINS RILEY & SCARBOROUGH LLP

*[s] Brandee J. Kowalzyk*
Brandee J. Kowalzyk (*Pro Hac Vice*)

*Attorneys for Defendants C. R. Bard, Inc., and Bard Peripheral Vascular, Inc.*